United States District Court
For the Northern District of California

1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10    TODD M. FERGUSON,                          No. C 04-2256 WHA (PR)

11                    Petitioner,               **ORDER DENYING PETITION
                                                 FOR WRIT OF HABEAS
12         vs.                                   CORPUS**

13    M. KANE, Warden,

14                    Respondent.
      _____/
15

16           This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254.  The

17    petition is directed to denial of parole.

18           The court ordered respondent to show cause why the writ should not be granted.

19    Respondent has filed an answer and a memorandum of points and authorities in support of it,

20    and has lodged exhibits with the court.  Petitioner has responded with a traverse.  For the

21    reasons set forth below, the petition is **DENIED**.

22                                    **STATEMENT**

23           On December 30, 1981, petitioner was involved in the robbery of a liquor store in Napa,

24    California, and the shooting of two clerks, one of whom was killed and other severely maimed

25    (Exh. 3 (decision of Board of Prison Terms) at 14).  Petitioner had formerly worked at the

26    liquor store and provided information about the layout of the store, and he also provided the

27    guns and masks for his two accomplices; he was, however, the getaway driver and did not go

28    into the store and did not personally shoot the victims (Exh. 3 at 14-15).

1    On August 11, 1983, he pled guilty to second-degree murder, attempted murder, and

2  conspiracy to commit robbery (Exh. 1).  He was sentenced to fifteen years to life in prison (*id.*).

3    On February 19, 2003, after a hearing before the Board of Prison Terms ("Board"),

4  during which petitioner was represented and was given an opportunity to be heard, the Board

5  found petitioner unsuitable for parole for the eighth time (Exh. 3 at 71-79).  The Board based its

6  decision upon the nature of the commitment offense, petitioner's unstable social history, his

7  escalating pattern of criminal activity, his prior criminal activity, his disciplinary record in

8  prison, his lack of a firm job offer if paroled, and the opposition of the district attorney and the

9  victim's widow (*id.*).

10                                           **DISCUSSION**

11  **A.    STANDARD OF REVIEW**

12    A district court may not grant a petition challenging a state conviction or sentence on the

13  basis of a claim that was reviewed on the merits in state court unless the state court's

14  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

15  unreasonable application of, clearly established Federal law, as determined by the Supreme

16  Court of the United States; or (2) resulted in a decision that was based on an unreasonable

17  determination of the facts in light of the evidence presented in the State court proceeding."  28

18  U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of

19  law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong

20  applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340

21  (2003).

22    A state court decision is "contrary to" Supreme Court authority, that is, falls under the

23  first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

24  reached by [the Supreme] Court on a question of law or if the state court decides a case

25  differently than [the Supreme] Court has on a set of materially indistinguishable facts."

26  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of"

27  Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies

28  the governing legal principle from the Supreme Court's decisions but "unreasonably applies

**United States District Court**
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1   that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas

2   review may not issue the writ "simply because that court concludes in its independent judgment

3   that the relevant state-court decision applied clearly established federal law erroneously or

4   incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support

5   granting the writ.  *See id.* at 409.

6           "Factual determinations by state courts are presumed correct absent clear and

7   convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not

8   altered by the fact that the finding was made by a state court of appeals, rather than by a state

9   trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

10  1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and

11  convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory

12  assertions will not do. *Id.*

13          Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

14  will not be overturned on factual grounds unless objectively unreasonable in light of the

15  evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres*

16  *v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

17          When there is no reasoned opinion from the highest state court to consider the

18  petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501

19  U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).  In

20  this case that is the decision of the California Superior Court for Sonoma County denying

21  petitioner's state habeas petition in which he challenged this parole denial (Exh. 13).

22  **B.   ISSUES PRESENTED**

23          As grounds for habeas relief, petitioner asserts that: (1) his due process rights were

24  denied when the Board denied parole for the eighth time based on the circumstances of his

25  crime; (2) the denial of parole made his sentence the equivalent of a first degree murder life

26  sentence, which breached the plea bargain; and (3) the Board's decision was arbitrary,

27  capricious, and not supported by the evidence.

28  ///

3

United States District Court

For the Northern District of California

### 1. DUE PROCESS

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV, § 1.  In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause.  The right was created by the "expectancy of release provided in [the Nebraska parole statute.]"  That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts.  *Id.* at 11–12.  The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987).  There it held that a similar liberty interest was created even though the parole board had great discretion.  *Id.* at 381.  For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995). *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole).  In such a case, a prisoner has liberty interest in parole that cannot be denied without adequate procedural due process protections.  *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

Respondent contends that California law does not create a liberty interest in parole.  But California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and

4

United States District Court

For the Northern District of California

1    *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on

2    parole.  In California, the panel or board "shall set a release date unless it determines that the

3    gravity of the current convicted offense or offenses, or the timing and gravity of current or past

4    convicted offense or offenses, is such that consideration of the public safety requires a more

5    lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be

6    fixed at this meeting."  Cal. Penal Code § 3041(b).  Under the clearly established framework of

7    *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in

8    release on parole."  *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  The scheme

9    requires that parole release be granted unless the statutorily defined determination (that

10    considerations of public safety forbid it) is made.  *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16

11    (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence

12    implicated prisoner's liberty interest).  In sum, the structure of California's parole scheme --

13    with its mandatory language and substantive predicates – gives rise to a federally protected

14    liberty interest in parole such that an inmate has a federal right to due process in parole

15    proceedings.

16       Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct.

17    92 (2005), as authority for his contention that the California statute does not create a liberty

18    interest in parole.  This argument has been rejected by the United States Court of Appeals for

19    the Ninth Circuit.  *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

20       Respondent's argument as to a liberty interest is without merit.

21       **2.**     **SOME EVIDENCE**

22       Petitioner contends that his due process rights were violated when (1) he was denied

23    parole for the eighth time because of the circumstances of the crime and (2) that the denial was

24    arbitrary and capricious and not supported by some evidence.  As both these issues are really

25    claims that the evidence was not sufficient to satisfy due process, they will be considered

26    together.

27       The Supreme Court has clearly established that a parole board's decision deprives a

28    prisoner of due process if the board's decision is not supported by "some evidence in the

United States District Court

For the Northern District of California

1   record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying

2   "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*,

3   472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same).  The evidence underlying the

4   Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904;

5   *Biggs*, 334 F.3d at 915.  The some evidence standard identified in *Hill* is clearly established

6   federal law in the parole context for purposes of § 2254(d).  *See Sass*, 461 F.3d at 1128-1129.

7        Ascertaining whether the some evidence standard is met "does not require examination

8   of the entire record, independent assessment of the credibility of witnesses, or weighing of the

9   evidence.  Instead, the relevant question is whether there is any evidence in the record that

10   could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*,

11   461 F.3d at 1128.  The some evidence standard is minimal, and assures that "the record is not so

12   devoid of evidence that the findings of the disciplinary board were without support or otherwise

13   arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

14        Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the

15   Board's use of evidence from the commitment offense and prior offenses.  In *Biggs*, the court

16   explained that the some evidence standard may be considered in light of the Board's decisions

17   over time.  *Biggs*, 334 F.3d at 916-917.  The court reasoned that "[t]he Parole Board's decision

18   is one of 'equity' and requires a careful balancing and assessment of the factors considered . . .

19   A continued reliance in the future on an unchanging factor, the circumstance of the offense and

20   conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison

21   system and could result in a due process violation." *Id.*  Although the *Biggs* court upheld the

22   initial denial of a parole release date based solely on the nature of the crime and the prisoner's

23   conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs

24   continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a

25   parole date simply because of the nature of his offense would raise serious questions involving

26   his liberty interest." *Id.* at 916.

27        The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to

28   speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129.  *Sass*

United States District Court

For the Northern District of California

1    determined that it is not a due process violation per se if the Board determines parole suitability

2    based solely on the unchanging factors of the commitment offense and prior offenses.  *See id.*

3    (prisoner's commitment offenses in combination with prior offenses amounted to some

4    evidence to support the Board's denial of parole).  However, *Sass* does not dispute the argument

5    in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current

6    threat to the public safety.

7         In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded

8    that relief for Irons was precluded by *Sass*.  *See Irons*, 470 F.3d at 664.  The Ninth Circuit

9    explained that all of the cases in which it previously held that denying parole based solely on

10   the commitment offense comported with due process were ones in which the prisoner had not

11   yet served the minimum years required by the sentence.  *Id.* at 665.  Also, noting that the parole

12   board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's

13   rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in

14   some cases, indefinite detention based solely on an inmate's commitment offense, regardless of

15   the extent of his rehabilitation, will at some point violate due process, given the liberty interest

16   in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917).  Even

17   so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging

18   circumstances would amount to a due process violation.

19        That is not what happened here, however.

20        In denying petitioner's state petition, the Sonoma County Superior Court held that after

21   an individualized analysis, the Board gave sufficient reasons on the record for denying

22   petitioner's parole (Exh. 13).  The Board, in denying petitioner parole, cited not only the nature

23   of the commitment offense, but also petitioner's unstable social history, his escalating pattern of

24   criminal activity, his prior criminal activity, his disciplinary record in prison, his lack of a firm

25   job offer if paroled, and the opposition of the district attorney and the victim's widow (*id.*).

26   With the exception of the opposition of the prosecutor and the victim, all these circumstances

27   "tend to indicate unsuitability for parole" under California regulations.  Cal. Code Regs. Title

28   15, § 2402(a), (c)(1)(A).  The Board did not deny parole solely because of the unchanging

7

United States District Court

For the Northern District of California

1    factor of the nature of petitioner's offense, so the concern expressed in *Biggs*, that after passage

2    of enough time such a factor would cease to be "some evidence," is not triggered here.

3         Petitioner argues that it was irrational for the Board to rely on the gruesome details of

4    the execution-style shootings of the two clerks by his accomplices as grounds to conclude that

5    the public safety requires a more lengthy incarceration for him. *See* Cal. Penal Code § 3041(b)

6    (public safety standard). To some extent he has a point; when the issue is someone's guilt, it

7    makes sense to attribute the conduct of accomplices to the defendant, as happened here, but

8    when predicting that person's future dangerousness, only conduct that is actually attributable to

9    the defendant/petitioner seems relevant. That does not cause the characteristics of petitioner's

10   offense to have no evidentiary value, however, because he helped plan the robbery and provided

11   guns and ammunition. It may be that he did not expect or intend that the guns would be used,

12   but in providing the guns and ammunition he had to have foreseen that they might be used, or

13   should have done so. In terms of predicting his current dangerousness, then, what matters is

14   that at the time of his crime he was the sort of person who would plan a violent robbery and

15   provide guns and ammunition, with the attendant dangers. If he were still that sort of person, he

16   would indeed be a danger to public safety, so the fact that he once was that sort of person is

17   relevant to the Board's difficult task of attempting to predict whether he is still dangerous.

18        At the time of the hearing petitioner's crime was twenty years in the past. The

19   evidentiary value of his offense thus was slight. The Board, however, also based its decision on

20   petitioner's disciplinary record in prison, his lack of contrition, and his lack of a firm job offer if

21   paroled (Exh. 3 at 71-79). Perhaps rather marginally, this was sufficient evidence to support the

22   denial. *See Rosas v. Nielsen*, 428 F.3d 1229, 1232–33 (9th Cir. 2005) (facts of the offense and

23   psychiatric reports about the would-be parolee sufficient to support denial).

24        Because there was no constitutional violation, the state courts' denial of this claim was

25   not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

26

27        **2.    BREACH OF PLEA BARGAIN**

28        Petitioner contends that by denying him parole the Board has breached his plea bargain,

**United States District Court**
For the Northern District of California

1    because it is in effect treating him as if he had been convicted of first-degree murder.  The plea

2    bargain called for a sentence of fifteen years to life (Exh. 18 at 2), and that is what petitioner

3    received (Exh. 1).  Although plaintiff contends he is being punished as if he had pleaded to

4    first-degree murder, he in fact is receiving the parole considerations that his fifteen-to-life

5    sentence entitles him.  First degree murder is punishable by death, life without parole, or a term

6    of twenty-five years to life.  Cal. Penal Code § 190(a).  If petitioner had been convicted of first-

7    degree murder, he would not even yet be receiving consideration for parole.

8        This claim is without merit.  The state courts' rejection of petitioner's argument was not

9    contrary to, or an unreasonable application of, clearly established Supreme Court authority.

10                       **CONCLUSION**

11        The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

12        **IT IS SO ORDERED.**

13

14    Dated:  September ___18___, 2007.

15                                        WILLIAM ALSUP
                                       UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

G:\PRO-SE\WHA\HC.04\FERGUSON256.RUL.wpd

United States District Court

For the Northern District of California